JOHN G. JOHNSON v. MINNEAPOLIS GENERAL ELECTRIC COMPANY.[1]

January 7, 1897.

Nos. 10,306—(159).

**Master and Servant—Vice Principal—Contributory Negligence.**

In an action brought to recover for personal injuries received by plaintiff while in defendant's employ, it is *held* that, on the evidence introduced by plaintiff, it was for the jury to determine whether another employé, the superintendent of defendant's plant, was a vice principal at the time of the accident, and whether such accident resulted from the negligence of such employé.

Appeal by defendant from an order of the district court for Hennepin county, Smith, J., granting a motion for a new trial. Affirmed.

*Flannery & Cooke*, for appellant.

The testimony shows beyond dispute that the blocking of the boiler on the wagon, the removal of the skids, and the unfastening of the rope were but details of the work, and it is immaterial whether Mr. Wright or some one else directed these things to be done. It was but the direction of one fellow servant to another. Lindvall v. Woods, 41 Minn. 212, 42 N. W. 1020; Marsh v. Herman, 47 Minn. 537, 50 N. W. 611; Ling v. St. Paul, M. & M. R. Co., 50 Minn. 160, 52 N. W. 378; Hussey v. Coger, 112 N. Y. 614, 20 N. E. 556; Van Den Heuvel v. National F. Co., 84 Wis. 636, 54 N. W. 1016.

There was no hidden danger which was known, or ought to have been known, to defendant and unknown to the plaintiff. The plaintiff knew as well as any one that the boiler might roll unless blocked. He stood by the wheel which, it is claimed, did sink into the ground. His opportunities for knowing the exact situation were superior to those of defendant. Gavigan v. Lake Shore & M. S. R. Co. (Mich.) 67 N. W. 1097; Capper v. Louisville, E. & St. L. R. Co., 103 Ind. 305, 2 N. E. 749; Russell v. Tillotson, 140 Mass. 201, 4 N. E. 231; Paule v. Florence M. Co., 80 Wis. 350, 50 N. W. 189; Reed v. Stockmeyer, 74 Fed. 186; Bailey's Master's Liability, 220; Van Den Heuvel v. National F. Co., supra.

[1] Reported in 69 N. W. 713.

*John M. Rees,* for respondent.

COLLINS, J.   This is a personal injury case, in which a dismissal was ordered at the close of plaintiff's evidence, and then, upon motion, the court granted a new trial.

The plaintiff was in defendant's employ as a laborer, his principal work being in the engine room as a "wiper."   One Wright was the chief engineer, and had charge of the men employed about the plant, usually 12 in number.   In December, 1894, defendant had occasion to move some heavy iron boilers which had been stored upon its premises, and one evening Wright called plaintiff and another man from the engine room to assist in loading one of these boilers upon a truck.   It was after dark, but the electric light in the vicinity gave sufficient light for the work in hand.

The boiler to be loaded lay on top of others which rested upon timbers lying on the ground, was 14 feet in length, 42 inches in diameter, and was cylindrical.   The truck was placed parallel with the boilers, about four feet distant, and two skids were used, one end of each being laid upon the under tier of boilers, the other ends upon the platform of the truck, the ends last mentioned being a little lower than those on the boilers; and, to control the movement of the one to be loaded, one end of a snub rope was made fast to the boilers which were to remain, and the rope itself passed around the other, and then held and managed by one of the men who was assisting the plaintiff and others in the work.

There was testimony tending to show that Wright directed all of these movements.   When the boiler reached its place on the platform of the truck, Wright ordered plaintiff to take away the skid nearest him at the rear of the truck, and he stepped between it and the boilers lying on the timbers, seized the skid, and threw it upon or towards these boilers.   At the same time Wright ordered another man to remove the other skid, and this was done immediately.   Wright then ordered plaintiff to loosen the rope where it had been fastened.   He turned his back towards the truck for this purpose, and had just commenced to unfasten the rope, when the boiler rolled off the truck, struck him, and caused the injuries complained of.

The truck was furnished with iron side pins, and there was an abundance of wood blocking lying on the ground, but no effort

was made to block the boiler as it lay on the platform of the truck until just as it commenced to roll, and then an attempt proved unavailing. The evidence also tended to show that the ground upon which the wheels of the truck stood was solid on the side away from the boilers, while on the side nearest thereto it was soft, so that, when the boiler was on the truck, its weight caused one hind wheel to sink into the ground several inches, thus to incline the platform of the vehicle, and to facilitate the rolling in that direction, and that Wright knew of this condition of the ground.

On these facts we have first to inquire if it was for the jury to determine in what capacity Wright was acting when the boiler was being loaded. Was he a vice principal of the defendant, or was he simply a fellow servant of the plaintiff? We have stated that he was the chief engineer, having charge of all of the men at work about the plant. He was the superintendent, and had and exercised control over the establishment and the employés. He was, so far as was shown by the evidence, the sole representative of the defendant corporation, and for two years had given plaintiff his orders, to the exclusion of all other persons. On the night in question he ordered the plaintiff to go from the engine room outside, and assist in loading the boiler; and while the work, which was difficult, and required the exercise of skill to avoid accidents to the men as well as to the article to be moved, was being done, he seems to have directed the same, and to have exercised full authority over the men employed. The jury would have been justified in finding that what Wright did on this occasion pertained to his duty of superintendence as a foreman, in which position he represented the defendant as master, and that as such foreman he was a vice principal.

This being so, the next inquiry is whether there was evidence upon which the jury could have found that Wright failed to exercise ordinary care to protect plaintiff from unusual danger; and of this there seems to be little doubt, when we consider that Wright, without taking any precaution to prevent this heavy cylindrical body from rolling,—without causing it to be blocked upon the truck, so that it could not roll off,—ordered the plaintiff to remove one of the skids, and another workman to remove the other, either of which would materially prevent the movement of the boiler to-

wards the side it had been loaded from, and then ordered him to loosen the snub rope, both acts necessarily to be performed in an extremely dangerous place should the boiler roll in that direction. Upon the evidence it was for the jury to say whether or not the representative of the master, having and exercising control over the men and the work they were engaged in, was negligent when he gave orders to plaintiff which brought him between the truck and the boilers lying upon the timbers. See Carlson v. Northwestern T. E. Co., 63 Minn. 428, 65 N. W. 914; Abel v. Butler-Ryan Co., 66 Minn. 16, 68 N. W. 205.

The trial court erred when it dismissed the case, and hence the order granting a new trial must be sustained.

Order affirmed.

CANTY, J. I am of the opinion that it conclusively appears from the evidence that Wright was a foreman under whom plaintiff worked, but it was a question of fact for the jury whether or not Wright was, under all the circumstances, a vice principal, for whose negligence the master is liable. As to the principles on which the jury are to proceed in determining whether or not Wright was a vice principal, it seems to me the majority opinion is very indefinite, if not wholly silent.

In my concurring opinion in Abel v. Butler-Ryan Co., supra, I have stated quite fully the principles on which I believe this question should be submitted to the jury.

Here, as in that case, the jury would have been justified in finding that the work was of a character which required a high degree of skill and foresight in the foreman, and but little skill or experience in the inferior servants under him, and that these inferior servants were not able to exercise the skill necessary for their own protection, and could not be expected to do so. The work was of a temporary character, and was being performed by unskilled laborers, who were taken from other kinds of employment, and had not served long enough in this new employment to become familiar with its dangers. If the work had been long continued or of a permanent character, so that the men would have had sufficient opportunity to become familiar with and to appreciate the dangers, the case would be different.

Again, there were some dangers which the men, even with their short term of experience, should appreciate, and, as stated, there were others which they might not. They knew that the boiler was round, and that, if the platform of the truck inclined towards the side from which the boiler was loaded, the latter might roll off, and injure them. Common laborers, as inexperienced as they were in this work, should know and appreciate this. And if the platform of the truck was thus inclined at the time the boiler was being rolled onto it, the plaintiff should not recover. In that case there was no disparity of knowledge or skill between him and the foreman as to the particular danger causing the injury; they stood on a substantial equality. But if the platform of the truck was not thus inclined while the boiler was being loaded, but became so afterwards, because the great weight of the boiler sunk the wheels on that side of the truck into the soft ground, the case may be different.

Here was a somewhat complicated and unusual condition of things, which an ordinary common laborer might not have the forethought to look out for, and such a laborer, engaged as this plaintiff was, might not have had the time or opportunity to observe the effect which the weight of the boiler thus had on the truck. On the other hand, it may be that a competent foreman should have had the skill and forethought to anticipate the effect of the great weight of this boiler on the truck on this soft ground, or should have observed the effect after the boiler was placed on the truck, and should have acted accordingly in giving orders to plaintiff.

These are all questions for the jury to consider; and if they find the facts to be as here supposed, and that substantial disparity existed between the foreman and plaintiff in these respects; that plaintiff was injured by reason of the want of skill, forethought, or experience which he did not have, and which such a common laborer could not be expected to have, but which a competent foreman should have and exercise for the safety of such laborer,— then the foreman was a vice principal, for whose negligence the master is liable.

If the jury find that the foreman was a vice principal as respects the particular danger which brought about the injury, then the

67 M.—10

next question for them to determine is whether or not he was negligent in the discharge of his duties as such vice principal, and whether such negligence caused or contributed to the injury.