GEORGE B. PICKETT, Respondent, v. QUINCY, OMAHA & KANSAS CITY RAILWAY CO., Appellant.

Kansas City Court of Appeals, May 15, 1911.

1. RAILROADS: Evidence: Negligence: Order to Fireman: Turkey on Track: Jury Question. Plaintiff was a fireman on one of defendant's engines and was injured by falling from the engine, being run over and having his feet cut off. He testified that he was ordered by the engineer, while the train was running in the morning at ten or fifteen miles an hour, to go forward and see if the headlight had been turned out. That on account of the sun shining in on the reflector, it could not be told from the cab; he went forward, stepped down off the running board to the pilot beam and stood on tiptoe and looked in the headlight reflector and found the light had been put out. That as he went to return he lost his balance on account of the rough and uneven track and fell in front of the engine. The engineer testified in denial of plaintiff's story and stated that he asked plaintiff "if he had caught any turkeys this year," and just then seeing some on the track told plaintiff, who, of his own accord, went forward to take position on the pilot to catch a turkey; that the turkeys left the track without plaintiff getting one, and he started to return, when he, by some means, fell off the engine and was hurt. Held: That however strange and uncommon these opposing stories were, it was for the jury to decide between them, and having found for the plaintiff, the verdict will not be disturbed in an appellate court.

2. ———: ———: ———: Order: Engineer: Fireman. Where an engineer said to a fireman on an engine running ten or fifteen miles per hour, on an early morning when the sun was shining into the headlight reflector: "George, is the headlight out?" and is answered: "Yes, I think it is," and then said "Go out and see if the headlight is burning and put it out." Held: That this was an order to the fireman.

3. ———: ———: ———: Glaring Danger: Jury Question. Though a servant is ordered to perform a service, yet if such service is so glaringly dangerous that no prudent man would attempt to perform it, the master is not liable to the servant if he is injured in obeying the order. But if the service consists in going out on the engine while it is running, that being a thing frequently done by the engineer and fireman, it makes a question for the jury whether plaintiff was guilty of contributory negligence in obeying the order.

Appeal from Clay Circuit Court.—*Hon. Francis H. Trimble,* Judge.

AFFIRMED.

*John W. Clapp, James S. Simrall* and *J. G. Trimble* for appellant.

*John W. Bingham, E. R. Sheetz* and *E. M. Harber* for respondent.

ELLISON, J.—This action is for damages resulting to plaintiff by reason of receiving personal injury while in defendant's employ, which plaintiff charges was occasioned by defendant's negligence in maintaining a rough and uneven track with rotten and broken ties and in ordering plaintiff into a place of danger. The judgment in the trial court was for the plaintiff.

Plaintiff was a fireman on one of defendant's freight engines, and had ample experience as such. On the morning of September 19, 1909, as the train was going east between the stations of Brashear and Hurdland, he left the engine cab and went along the footboard to the front of the engine and thence stepped down to the pilot or "cowcatcher" and was thrown from the engine on account of the rough track, or else he fell therefrom by his own awkwardness or negligence. At any rate he did fall from the engine, and his legs were crushed near the ankles by the engine wheels, so that his feet had to be amputated.

He and the engineer differ as to the cause of his going to the front of the engine. He testified that after the train left Brashear and was running ten or fifteen miles an hour, the engineer asked him if he had put out the headlight. He thought he had, but as the sun was then shining in the reflector, it could not be told certainly from the engine cab whether the light was out.

So the engineer ordered him to go forward and see. That in obedience to this order he went along the "running board," stepped on the steam chest and then on the pilot beam and then to the front of the engine. The distance from where he was standing to the headlight being about seven feet, he held onto a bar and stood "tip-toed" to see if the light was out. He saw that it was out and started to return to the cab. He took a step or two when, on account of the rough track, the engine was rolling so that he lost his balance and fell. He fell to the track on his back and hips, a few inches in front of the engine, but stated that "I shoved up the track maybe fifteen feet, maybe further, and got my right elbow behind me and then got hold of a tie or something and kind of raised myself up, I kind of threw myself—gave myself a kind of a throw with my left hand and threw myself outside of the rail," his two feet not clearing the rail. On cross-examination, instead of saying "I shoved up the track" fifteen feet, he makes the more probable statement that he was *"pushed"* up the track fifteen feet. Though his feet were cut or mashed off by the wheels, he said that "as the tender passed over me I pulled out my watch to see what time it was and it was 8:35 just exactly."

The engineer testified that the cause of the plaintiff going to the front of the engine was a conversation between them which he relates in the following language: "Well, we were talking just before he left the cab, and I don't know how the conversation came about, but we were talking about turkeys and he made the remark that he hadn't caught a turkey this year, and I told him turkeys hadn't got large enough yet, they were too small, he'd have to wait later; and he got the shovel and went to putting in coal, and I saw some turkeys come up on the track and I told him, and he dropped the shovel and left the door open and went after the turkeys." He further stated that he saw him standing on a little step at the bottom of the pilot, which is

used for switchmen to step on when switching, and after the turkeys got off the track and he did not get any, "he smiled, turned around, waved his hand and started back." He got out of the engineer's view and the latter did not know he had fallen off until after the airbrakes were set from the caboose by some one who saw him lying beside the track as the caboose passed.

Defendant's defense is based altogether on the ground that plaintiff's story of the engineer's order and his executing it, is false; and, if true, that the order was such as that obedience to it involved such patent danger as to have demanded of plaintiff a refusal to obey it.

The case is not easy to determine, even with the advantage which the verdict gives to the plaintiff's side of the controversy. The story told by each side in supporting their respective positions would cause the credulous to hesitate, if not to doubt. That the plaintiff should have taken the long and hazardous step down onto the pilot beam where he would have to stretch upon tiptoe to look into the reflector to see if the headlight was burning, when he could have made a short step onto a place provided for that purpose, opened the side door of the headlight box and looked straight in at it, is very strange conduct; especially so, when that is the place he would have been compelled to go to put out the light if he had found it burning, after going over the dangerous way to get his tiptoe view.

On the other hand, that the engineer and plaintiff should have been engaged in conversation about catching turkeys and just at that time, as counsel expressed it, "Lo and behold, a flock appeared upon the track," is a strange coincidence. Witnesses stated that turkeys and chickens may be killed by attempting to fly out of the way of a running train. It was stated that when come upon by a fast-moving train, these birds incline to fly straight up instead of horizontally, and by this means are sometimes struck by the engine. It

therefore may be possible for a person standing on the front of an engine to catch one if he is daring enough to risk the effort.

These opposing theories, each backed by evidence, as we have stated, left a hard case for decision, but the law has left its solution to a jury. A decision from that body concludes us, as an appellate tribunal, so long as it is within the limits of reason. It is for the jury to determine the credit which should be given witnesses and to decide on the probability of truth in opposing statements. Much appeared for either side, of an impeachment character—some of this attacked the reasonable probability of the stories in the circumstances in which incidents were told, and some of it was in direct contradiction. All of it was matter for the triers of the facts, and because the case appears to us to be a close one and includes essential elements that are uncommon, we cannot for that reason say, as matter of law, that they could not happen as told by the plaintiff.

Defendant says that even allowing the truth of what plaintiff stated as to the words addressed to him by the engineer, it did not amount to an order. We do not agree to this. The words of the engineer were these: "George, is the headlight out?" Plaintiff answered: "Yes, I think it is." And the engineer said: "You had better go out and see and put it out." Then, on the plaintiff continuing to throw coal on the fire, the engineer repeated: "Go out and see if the headlight is burning and put it out." There can be no doubt that this was an order, leaving no discretion in the plaintiff. It was much more imperative than where the section hand said to the foreman: "Jack, there are two stones on the track," and the foreman said: "It is time you were getting them off," which was held to be an order, in Stephens v. Railroad Co., 96 Mo. 207. [See, also, Schroeder v. Railroad Co., 108 Mo. 322; Jewell v. K. C. Bolt & Nut Co., 132 S. W. 706; and Milbourne v. Electric Co., 140 Mich. 316.]

But defendant further insists that, conceding the words uttered by the engineer were an order, yet it was an order to do a perilous service and no prudent man should have obeyed it. In Shortel v. City of St. Joseph, 104 Mo. 114, cited by defendant, it is said that "if the danger is so obvious that a prudent person, though acting in the capacity of a servant, would not obey the order, then he will be guilty of contributory negligence which will defeat a recovery." And to the same effect is Zentz v. Chappell, 103 Mo. App. 208. This is a well recognized proposition of law and we have only to see if it applies to the facts as they appear in this case. It appeared in testimony that the fireman and engineer go about on the engine while it is running, when it becomes necessary to do so. The construction of the engine itself, with its running boards and steps, as shown in evidence, makes certain that the mere leaving the cab to go out to look at the headlight was not a danger of such perilous and daring character as not to be performed by a prudent man. There is no question that the order was one that could be obeyed with reasonable safety, if its execution was attempted in the proper manner, and that is really the only question in the case after we accept the verdict as establishing that the engineer gave plaintiff the order. The testimony showed, as we have already stated, that plaintiff might have looked at the headlight by stepping from the running board onto a step provided for that purpose, and it may well be inferred that getting down on the pilot was a more hazardous way. But it was shown that the engine rolled and rocked on account of the defective track and that this step was higher up on the engine than the position plaintiff took and was only six inches wide by twelve inches long. So therefore it became a matter for the jury to say whether plaintiff should be charged with contributory negligence in choosing the pilot beam instead of this step. This and all other matters

as to the order, and plaintiff's contributory negligence, were submitted in appropriate instructions.

On the whole record, we feel that we are without right to disturb the verdict, and the judgment is accordingly affirmed. All concur.