BEN HANSEN v. DULUTH & IRON RANGE RAILROAD COMPANY.[1]

December 19, 1919.

No. 21,569.

**Master and servant — evidence of foreman's negligence insufficient.**

The plaintiff was engaged in thawing out ore in an ore pocket in the defendant's dock, using a hose which extended over the rail of a track. The foreman told him that a train was coming in on his track and to take out the hose. It was his duty to take out the hose when a train came in on the track on which he was working and this he

[1]Reported in 175 N. W. 549.

would do without a direction when he saw a train coming. While endeavoring to take out the hose, moving hurriedly, it being night-time and the atmosphere misty because of the accumulated steam, he made a misstep and fell into the ore pocket and was injured. It is *held* that the direction of the foreman was not negligent.

Action in the district court for Lake county to recover $15,000 for personal injuries while in the employ of defendant. The answer alleged that the injuries were caused by the negligence of plaintiff and he assumed the risks and dangers he encountered at the time of the accident. The case was tried before Freeman, J., who when plaintiff rested granted defendant's motion for a directed verdict on the grounds that no negligence of defendant had been shown; that no negligence of defendant had been shown causing proximately the accident to plaintiff; that it affirmatively appeared that plaintiff's own act was the sole cause of his accident and injury, and that it affirmatively appeared that plaintiff assumed the risks of the dangers which he encountered at the time of the accident. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Andrew Nelson* and *John Cedergren,* for appellant.

*Howard T. Abbott,* and *Abbott, MacPherran & Gilbert,* for respondent.

DIBELL, J.

Action for personal injuries. The court directed a verdict for the defendant. The plaintiff appeals from the order denying his motion for a new trial.

The plaintiff, Ben Hansen, was working for the defendant railroad company on its ore docks at Two Harbors. The ore is automatically unloaded from the bottom of the ore cars into the pockets underneath. There are no cross-ties between the two rails of a track, but some 12 feet apart heavy timbers or cross planks two feet wide are laid. They separate the pockets and are used by the men in going across. Between the different tracks the dock is solidly planked.

The plaintiff was thawing out ore in the pockets. It was the night of December 5, 1917, and it was cold and windy. In thawing the ore steam was used. It was gotten from a nearby engine on another track through a rubber hose some 50 feet long equipped with a five foot metal nozzle.

The plaintiff worked from the cross-plank and stuck the nozzle well into the mass of ore. The use of steam made the atmosphere misty and it was difficult to see. Cars of ore came in from time to time and might come upon a track where one thawing ore was working, and in such event he took out his hose and yielded to the ore train.

After properly adjusting the nozzle the plaintiff went over to the pilot of the engine which supplied the steam and stood there some minutes while the steam was doing its work. When there the foreman, who was somewhere about but not in sight, hallowed to him: "Hansen, get that hose out of there; there is a train coming in on that rail." The plaintiff then went to the cab and had the engineer shut off the steam. He then saw "the shining bottom or flange of the wheels rolling towards me about as fast as a man could walk," and about 50 or 60 feet away. He could not see the tops of the cars because of the mist and smoke. The cars were coming on the track over one rail of which the hose extended. This is the last we hear of the incoming cars. So far as the record shows they were not seen afterwards nor did the plaintiff look for them. He went from the engine over to the ore pocket and was in a hurry. He intended to step upon the cross-plank and pull out the hose. He mistook its position and stepped into the pocket and fell and was injured.

The negligence claimed is the giving by the foreman of the direction which we have quoted. We find none. Not to give some warning might well enough have been negligence. It is claimed that the direction was given in a loud and commanding way. That the direction was given in a loud voice does not indicate negligence. That it was given in a commanding tone is not of particular significance. There was no negligent sending into a place of danger. Counsel for the plaintiff cite the following cases in support of their claim that the direction was a negligent one. Johnson v. Minneapolis G. Ele. Co. 67 Minn. 141, 69 N. W. 713; Stephens v. Hannibal, etc. R. Co. 96 Mo. 207, 9 S. W. 589, 9 Am. St. 336; Illinois Cent. R. Co. v. Atwell, 198 Ill. 200, 64 N. E. 1095; Pickett v. Quincy, etc. R. Co. 156 Mo. App. 272, 137 S. W. 636; Missouri, etc. Ry. Co. v. Freeman (Tex. Civ. App.) 168 S. W. 69; Hogan v. Pennock, 216 Mass. 274, 103 N. E. 831. We have examined all of them. Quite generally they involve situations where one is injured by a train in front of which he is directed to work. We do not regard the case at bar as coming

within the principle of the cases cited. No more serious consequence would result from not taking out the hose than the cutting of it in two. It was not the case of a justifiable exposure to danger upon the command of a superior in an effort to save property. Sensibly construed the so-called demand was nothing more than a warning. The plaintiff, seeing the cars coming, would have endeavored to take out the hose, just as he did, without a warning or direction. He was injured in the faithful discharge of his duties which exposed him to considerable danger with weather conditions as they were. The direction of the foreman was not the negligent cause of his injury, and it is difficult not to believe that the plaintiff is mistaken in some of his facts.

Order affirmed.