## Lee *versus* Woolsey.

1. In an action to recover damages for personal injuries, the plaintiff must show a case of negligence by defendant, clear of contributory negligence by himself; but where the measure of care which the plaintiff ought to have exercised shifts with the circumstances, or when the care which ought to be exacted from an employee has been varied by the conduct of his employer, the question of contributory negligence is for the jury. Only when the plaintiff's testimony clearly shows his concurrent negligence, may the Court order a nonsuit on that ground.

2. When an employee is working under the immediate supervision of his employer, who is spurring him to hurry the work, the employee will not be held to the same measure of care that would be required of him, if the circumstances afforded opportunity for more deliberate care; and where such an employee, working in a dangerous employment, was injured by an accident which probably would not have happened except

[Lee v. Woolsey.]

for the haste urged by the employer, the question of contributory negligence in an action brought by the employee against his employer, is one for the jury. It is error in such a case for the Court to grant a compulsory nonsuit on the ground of contributory negligence.

February 23d, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

This was an action on the case, by S. S. Lee against James Woolsey, to recover damages for personal injuries received while in the employ of the defendant.

On the trial, before HAND, J., the evidence on behalf of the plaintiff showed the following facts: The plaintiff was in the employ of the defendant, who was one of the contractors for the erection of the Academy of Music. It was plaintiff's duty to work preparing the roof of the building, which was not yet put up. On the day of the injury he was engaged with others in raising the jack-rafters to the upper floor of joist, which was in place. A space had been left between the joists of from nine to twelve feet, the width of two joists, for the purpose of hauling up these rafters through the floor. The plaintiff had been in the employ of defendant about twenty days, and the hoisting had been going on for ten days or two weeks. A gin-pole had been erected by Rymer, one of defendant's foremen or contractors, for the purpose of raising the rafters and other timber. This gin-pole ran through and above the opening, and had attached to it ropes and tackles, so arranged that one rope ran down and out to a gin located outside of the building, which was revolved by a horse in charge of a driver. This tackle was arranged so as to conveniently hoist any weight perpendicularly from the bottom of the gin-pole to the joist above. For the convenience of the men on the upper floor, who received the rafters as they were hoisted, one or two planks were placed across the opening between the joists and near the gin-pole. These planks were used for scaffolding and to rest the rafters upon after they had been hauled through the opening, previous to loosening the tackle and moving the rafters one side on the upper floor. It was necessary to remove these planks before the rafters reached the opening in order to let them through, also as matter of safety, to save their being slid one side by the rope and tackle, if it did not draw up perpendicularly. When a rafter had been received, and the persons above were ready to receive another, the word "all right" would be sent down to the man at the foot of the gin-pole, and he would signal to the driver, who would start the horse.

Just before the accident by which the plaintiff was injured, the defendant came to see how the work was going on, and not finding that as much progress had been made as in his judg-

ment should have been, he made use of strong language, and told the men to hurry up. At this time the tackle had been let down from above after a rafter had been hoisted, and the plaintiff had hitched it to another rafter, which lay. not at the foot of the gin-pole, but a distance of from 18 to 20 feet off. The plaintiff testified that he heard the defendant call down "all right;" he therefore started the horse, and as the rafter was not directly at the bottom of the gin-pole, the rope pushed off the loose planks above, one of which in falling struck the plaintiff. Had the plaintiff looked up he could have seen that the planks had not been removed.

After the plaintiff's case was closed, the court on motion entered a compulsory nonsuit, on the ground of contributory negligence. This nonsuit the court in banc refused to take off. Whereupon the plaintiff took this writ, assigning for error this action of the court.

*S. B. Price*, for plaintiff in error.

*H. M. Hannah*, for defendant in error.

Mr. Justice TRUNKEY delivered the opinion of the Court, March 16th, 1885.

At the time of the accident the plaintiff was engaged in dangerous work, most of the circumstances of which are stated in the opinion of the court below on refusing the motion to take off the nonsuit. Had the learned judge put more stress on the conduct of the defendant it is probable that he would have submitted the case to a jury. The testimony warrants belief that while the work was in progress the defendant went to the men on the upper floor, complained of slow performance, and ordered the men to "go ahead and get the stock up;" that prior to that occasion the men removed the planks before calling to those below that they were ready, but that time they were not removed because there was "too much of a hurry;" and that the plaintiff heard the defendant say "all right," which was the signal for the horse to start, and the horse was started without the plaintiff knowing whether or not the planks had been removed. The act of the defendant was closely connected with the fall of the plank. He was earnestly, if not angrily, pressing the laborers to haste, and giving them orders, which he had not done before; and it would have been strange had they exercised their usual care and thoughtfulness.

If an employee is in haste called upon to execute an order requiring prompt attention, he is not to be presumed necessarily to recollect a defect in machinery, or a particular danger connected with his employment, so as to avoid it. A prompt

[Lee *v.* Woolsey.]

and faithful employee suddenly called upon by a superior to do a particular act, cannot be supposed to remember at the moment a particular danger incident to its performance, of which he had previous knowledge; and it would be most unreasonable to demand of him the thought and care which might be exacted when there is more time for observation and deliberation: Wharton on Negligence, § 219. Like principle should be applied to the facts in this case. When the plaintiff was hurt he was working under the eye and voice of his employer who was urging speed, and saying "all right." He might have looked to see whether the planks were removed, and he might have taken time to have placed the jack-rafter at the foot of the gin-pole before starting the horse; but is it reasonable to exact such care of a laborer when his employer suddenly comes into the place of a foreman, personally directs the work, and gives emphatic orders to move quickly? The care to be exacted of the plaintiff is just that which laborers of ordinary prudence would exercise under like circumstances, and if the plaintiff did exercise it his action shall not be defeated on the ground of concurrent negligence.

Although the plaintiff was an actor in the act which resulted in his injury, whether he exercised due care under the circumstances is a question for the jury. He must show a case clear of his concurrent negligence, a case resulting exclusively from the negligence and wrong of the defendant, but when the measure of care which he ought to have exercised shifts with the circumstances, or when the care which ought to be exacted from an employee has been varied by the conduct of his employer, the jury alone can determine whether he negligently performed his duty. Only when the plaintiff's testimony clearly shows his concurrent negligence, may the court order nonsuit on that ground. We think the testimony ought to have been submitted, and the first three assignments are sustained.

The fourth assignment is not well taken. No foundation was laid for admission of the rejected testimony.

Judgment reversed and procedendo awarded.