# Reber *v.* Alsace Township, Appellant.

*Negligence—Master and servant—Assumption of risk—Sudden call to performance of a duty—Township.*

1. If an employee is, in haste, called upon by his employer to execute an order requiring prompt attention, he is not to be presumed necessarily to recollect a particular danger connected with his employment, so as to avoid it. Under such circumstances it would be unreasonable to demand of him the thought and care which might be exacted when there is more time for observation and deliberation.

2. Where a workman on a township road is called suddenly by the road master from a place where he was working in safety, to go to the foot of an undermined gravel bank to help to load a wagon, and while engaged in this work, at the only place open to him, the bank falls and injures him, the question, whether the workman assumed the risk of the danger into which he was hurriedly sent, and the question of his contributory negligence, are questions for the jury.

3. If, in such a case, there is evidence that the road master knew of the condition of the bank when he called upon the workman to come quickly and help unload the wagon, such evidence is sufficient to sustain a finding that the road master had negligently hurried the man into a position which imperiled his safety.

Argued Nov. 14, 1911. Appeal, No. 129, Oct. T., 1911, by defendant, from judgment of C. P. Berks Co., Oct. T., 1909, No. 41, on verdict for plaintiff in case of Samuel H. Reber v. Alsace Township. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before WAGNER, J.

The circumstances of the accident are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $500. Defendant appealed.

*Error assigned* amongst others was in refusing binding instructions for defendant.

*B. Morris Strauss*, for appellant.—Plaintiff assumed the risk of his employment: Sykes v. Packer, 99 Pa. 465; Danisch v. Amer, 214 Pa. 105; Schall v. Cole, 107 Pa. 1; Boyd v. Harris, 176 Pa. 484; Brossman v. R. R. Co., 113 Pa. 490; Green & Coates St. Pass. Ry. Co. v. Bresmer, 97 Pa. 103; Diehl v. Lehigh Iron Co., 140 Pa. 487; Masterson v. Eldridge, 208 Pa. 242; Kaufhold v. Arnold, 163 Pa. 269; Cracraft v. Limestone Co., 210 Pa. 15; Moore v. R. R. Co., 167 Pa. 495; Stitzel v. A. Wilhelm Co., 220 Pa. 564; Iron-Ship Bldg. Works v. Nuttall, 119 Pa. 149.

A master is not bound to warn and instruct his servant as to dangers which are patent and obvious: Illick v. R. R. Co., 35 N. W. Repr. 708; Foley v. Electric Light Co., 24 Atl. Repr. 487; Swanson v. LaFayette, 134 Ind. 625 (33 N. E. Repr. 1033); Naylor v. Ry. Co., 53 Wis. 661 (11 N. W. Repr. 24); Small v. Rys. Co., 216 Pa. 584.

The defendant was not negligent: Wormell v. R. R. Co., 10 Atl. Repr. 49; Phila. & Reading R. R. Co. v. Schertle, 97 Pa. 450; Reese v. Clark, 146 Pa. 465; Wojciechowski v. Sugar Refining Co., 177 Pa. 57; Alexander v. Water Co., 201 Pa. 252; Snodgrass v. Steel Co., 173 Pa. 228; Mensch v. R. R. Co., 150 Pa. 598; Bradbury v. Coal Co., 157 Pa. 231.

*Paul H. Price*, for appellee, cited: Lee v. Woolsey, 109 Pa. 124; Levy v. Rosenblatt, 21 Pa. Superior Ct. 543; Del., L. & W. R. R. Co. v. Jones, 128 Pa. 308; Menner v. D. & H. Canal Co., 7 Pa. Superior Ct. 135; Patterson v. R. R. Co., 76 Pa. 389.

OPINION BY PORTER, J., March 1, 1912:

The plaintiff was, on May 29, 1908, employed by the defendant township and engaged in shoveling gravel at a gravel bank, from which material was being taken to be used upon public roads. The operations at this gravel bank were under the direct supervision of John Lutz, the road master, who was in charge of and directing the entire

work upon the public roads of the township, including that at this gravel bank and the plaintiff and all other employees engaged in the work were bound to conform and did conform to his orders. It is not seriously contended by the defendant, and could not be under the evidence, that John Lutz was not a vice principal of the township and the latter is answerable for his negligence, if any there was. The plaintiff had gone to work at this gravel bank for the first time in the morning of the day upon which he was injured, and the accident occurred at about three o'clock in the afternoon. The location was near the public road and, at the time of the accident, the bank from which the gravel was taken was about eighty-five feet in length, and in height from eleven to fifteen feet above the bottom, where the men worked. The road master had employed under him at this work seven or eight men, three of whom were "diggers" and four or five "shovelers." The road master was himself present upon the ground all the time and personally directed the several employees as to the manner in which they should perform their duties. The formation of the bank was rather solid and it was necessary to undermine the bank, the road master testified, to a depth of at least eighteen inches, and then make a perpendicular cut in the face of the bank, so as to deprive the material intended to be thrown down of lateral support. The manner of working which had been adopted by the road master was to have the diggers undermine the bank and do the other work necessary to cause the gravel to fall into the pit at some point in the bank where the shovelers were not working, and after a mass of gravel had thus been thrown into the pit it made what the witnesses called "stock," with which the shovelers loaded the wagons; and the diggers went to another part of the pit to undermine the bank at a new point. All the evidence indicated that there was no danger of a fall or slide of gravel, at any given point in this bank, unless the bank had at that point been undermined, and that there was danger of such a fall when the bank had been under-

mined, the extent of that danger being dependent upon the depth to which the undermining had been carried. The evidence of the road master would have warranted a finding that to permit the diggers to continue their operations at any given point in the bank while the shovelers were engaged in working at the same point involved danger to the latter. The plaintiff had been working as a shoveler at what is referred to in the evidence as "the upper end" of the bank and he testified that at that end of the bank the material for loading the wagons was not obtained by undermining the bank but by simply digging it off from the face of the bank. The road master said in his testimony that the material at that end of the bank was not so solid, but did not expressly say whether the practice of undermining the bank was or was not used at that point. The plaintiff's work having been confined to the upper part of the bank until the hour named, he and the other man working with him as a shoveler were suddenly called to the lower end of the bank by the road master, who said: "Come down quick and help to load this wagon and then we will get a little blow," meaning a rest. The plaintiff hurried to obey this order and, there being several men already at work shoveling gravel into the wagon, he took his place at the only position open for him, between the wagon and the bank and about six or eight feet distant from the latter, and began to shovel gravel into the wagon. He had thus been engaged only a few minutes when a large mass of earth and gravel fell from the bank and injured him severely. He subsequently brought this action against the township to recover for such injuries and obtained a judgment in the court below, from which the township has taken this appeal.

The assignments of error raise only the question of the propriety of the action of the court in submitting the case to the jury and entering judgment upon the verdict. The appellant contends that the court should have withdrawn the case from the jury by affirming defendant's fifth point, which was, "The injury which befell the plaintiff was an

apparent risk necessarily incident to his employment, and for such injury he cannot recover;" and the seventh point, which was, "Under all the evidence in the case the verdict must be for the defendant." The first and second assignments of error refer to the refusal of the above points, and the third to the refusal of the court to enter judgment in favor of the defendant non obstante veredicto.

When an employee undertakes the performance of dangerous duties, he assumes such risks as are incident to their discharge from causes open and obvious with which he is familiar, or has the opportunity to become acquainted: Danisch v. Amer, 214 Pa. 105. There is no question about the soundness of the rule, but cases frequently arise when, under the evidence, it is difficult to determine whether the cause of the injury was open and obvious, so that the plaintiff must be assumed to have been familiar with the risk, or had an opportunity to become acquainted therewith. The knowledge, or presumed knowledge, by the party injured of the impending danger, of which he assumes the risk, must be to some extent dependent upon the opportunity which he has had to observe the existing condition. "If an employee is in haste called upon to execute an order requiring prompt attention, he is not to be presumed necessarily to recollect a defect in the machinery, or a particular danger connected with his employment, so as to avoid it. A prompt and faithful employee suddenly called upon by a superior to do a particular act, cannot be supposed to remember at a moment a particular danger incident to its performance, of which he had previous knowledge; and it would be most unreasonable to demand of him the thought and care which might be exacted when there is more time for observation and deliberation:" Wharton on Negligence, sec. 219. This language was quoted with approval and the principle therein stated sustained in Lee v. Woolsey, 109 Pa. 124 and Dougherty v. Dobson, 214 Pa. 252. We are convinced, after careful consideration of the evidence, that it should be applied in this case. The plaintiff was

injured upon the first day at which he had worked upon this gravel bank. He testified that he had been working at a point where the materials for loading the wagons were obtained without undermining the bank; that he had not previously been at the point where he was subsequently injured; that he did not know that the bank was undermined at that point; that he was suddenly called to come quickly and help load a wagon; that he hurriedly went to the point to which he was ordered and took the only place open for him to obey the order, with his back towards the bank which fell upon him; that without noticing the bank he at once proceeded to execute the order of the road master and that while so doing the bank fell upon him. All the testimony indicates that there was no danger whatever at the place from which the plaintiff was thus suddenly called. There was no evidence which would have warranted the court in holding that the plaintiff must be presumed to have known that the bank was undermined at the point to which he was thus hurriedly ordered by the road master. All the evidence indicated that there was no danger to the shovelers while working near the bank, unless the bank was undermined at that point. Under the general system of operation at this gravel bank the shovelers were not permitted to work at a point where the bank had been undermined. The risk which they took, therefore, was that usually accompanying working at the foot of a gravel bank, but not below a gravel bank which had been undermined. If there was any possible reason for holding that the plaintiff voluntarily assumed the risk of the bank falling, it must have been upon the ground that the plaintiff ought to have inspected the bank near which he was suddenly called upon to work and that he must be held to have known what that inspection would have revealed to him. But the authorities above cited hold that the plaintiff, having been called upon by his superior, the immediate representative of his employer, to act quickly, he is not to be held to the standard of care which should be exacted when there is more time for ob-

servation and deliberation. Whether this plaintiff assumed the risk of the danger of the position into which he was hurriedly sent was a question, under the evidence, for the jury, as was also the question of his contributory negligence.

The evidence would certainly have warranted a finding that there was no danger of a fall of earth and gravel from this bank unless it was undermined. All the diggers who were called as witnesses testified that the part of the bank which fell was undermined, and that this work was done under the express orders and direct supervision of the road master. Two of the witnesses testified that the depth to which it was undermined was eight or ten inches, but the third testified that he himself had undermined it to a depth of eighteen inches, and that he did so under the supervision of the road master. Now if the testimony of this third witness was true then the bank had been undermined to an extent which, according to the testimony of all the witnesses, greatly increased the danger of a fall. This witness also testified that the bank had at that point been cut perpendicularly, which added to the probability of a fall. The testimony would have warranted a finding that this work had been done under the direction of the road master, and that he must have known this condition of affairs when he called to the plaintiff to come quickly and help load the wagon. This was sufficient to sustain a finding that the road master had negligently hurried the plaintiff into a position which imperiled his safety. Whether the road master was negligent was a question for the jury. The question of the negligence of the road master as well as that of contributory negligence upon the part of the plaintiff was submitted to the jury in a manner which the defendant has not assigned for error. This case was for the jury and all the specifications of error are overruled.

The judgment is affirmed.

MORRISON, J., dissents.