\*TOLEDO & OHIO CENTRAL RAILWAY CO. v. ANDREW BEARD, ADMR.

1. APPOINTMENT OF ADMINISTRATOR CANNOT BE COLLATERALLY ATTACKED.

> Questions involved in the appointment and qualification of an administrator are conclusively determined by the order of the probate court and cannot be collaterally attacked.

2. EVIDENCE OF REPAIRS AFTER ACCIDENT INADMISSIBLE.

> In an action against a railway company for personal injuries, the admission of evidence of repairs to or changes in cars made after the accident is incompetent, and if admitted constitutes prejudicial error.

3. ACT 87 O. L., 149—DEFECTIVE CARS—CASE NOT WITHIN.

> The use of a flat car, for hauling stone, without side boards or end boards or standards, to prevent the stone from falling off and wrecking the train, is not the use of a defective car or a car with defective appliances, within the meaning of the act of April 2, 1890, 87 O. L., 149.

4. RULES APPLIED TO ASSUMPTION OF RISK.

> Where it appears that decedent brakeman had worked about the flat cars referred to when they were put into the train and that he had exactly the same opportunities for knowing the condition that such cars were in as any other employee, he must be held to have assumed the risk of injury therefrom, although the accident was not one which he could have anticipated from the manner in which the cars were loaded.

\* Affirmed by Supreme Court without report, December 13, 1898, 59 Ohio St., 615.

.5. USE OF APPLIANCES GENERALLY USED SUFFICIENT.

As long as an individual or a railway company uses in its business the same appliances that are in use generally in the same line of business, it cannot be held that such individual or company is guilty of negligence.

.6. REQUEST FOR SPECIAL FINDINGS.

Requests for special findings of fact to be answered by the jury under sec. 5201 Rev. Stat., are in time if submitted before the jury retires. B. & O. R. R. Co. v. McCamey, 5 Circ. Dec., 631, approved and followed.

HEARD ON ERROR.

*Kibler & Kibler*, for plaintiff in error.

*J. A. Flory*, for defendant in error.

.ADAMS, J.

The case of Toledo & Ohio Central Railway Company against Andrew Beard, as administrator of Henry Wesley, deceased, is he e on error to reverse a judgment recovered by Beard, as administrator, against the railway company, under the statute, for damages caused by the killing of Henry Wesley while employed as a brakeman on a train of the railway company, on June 7, 1893.

The petition sets out at length the appointment of the administrator by the probate court of this county; that the defendant is a railway company; that at the time of the accident, and ever since, it has been a corporation duly organized under the laws of Ohio, owning and operating a railroad running from Toledo, Ohio, through Licking county to the town of Thurston; that it ran and operated the necessary locomotives and cars over its road as a common carrier of freight and passengers. Without attempting to set out at length this petition, I may abbreviate it by saying that it alleges that Henry Wesley, while employed as a brakeman on a freight train of this defendant company, on June 17, 18.2, was killed in an accident to the freight train on which he was employed as brakeman; that it had in that train a certain flat car that was not properly equipped and constructed so as to carry freight upon it in a safe manner; that this flat-car was defective and insufficient by reason of the fact that it had no side boards, or end boards, or standards to prevent whatever was loaded on the car from falling off or being jolted off; that this brakeman was under the control of the engineer and conductor on that train; that it was their negligence, and the negligence of the superior officer, in not furnishing a safe car, and in taking this car loaded with stone into the train; that the railway company failed to adopt and enforce suitable rules for the protection of this brakeman; that by reason of all or some one of these careless and negligent acts and omissions of the defendant, its officers and agents, this car having been taken into the train, the car being loaded with stone, that one of these stones fell off of the end of the car upon the track; that that caused a wreck of the train; that this brakeman, riding on a car behind the flat-car carrying this stone, was thrown beneath the car which was wrecked, and killed. Alleges that he was twenty-two years of age; in good health, unmarried, and left his father, three sisters and a brother as his next of kin. There is a prayer for $20,000 damages.

The amended answer denies all acts of negligence upon the part of the railway company; alleges that the death of Henry Wesley was caused by his own negligence and carelessness; that the defendant was without

fault in the premises; it admits the employment; admits that he was killed in the accident; admits that it was a corporation; says that Henry Wesley was at no time during his life, or at the time of his death, an inhabitant of Licking county; that he left no estate or property to be administered in such county of Licking, and no property or assets has since come into said county; that the application for the appointment of the administrator of Henry Wesley was not made by any creditor; that no issue was determined as to any of these facts by the probate court prior to or in connection with the appointment of the plaintiff as administrator, and that the plaintiff is not the legally appointed and qualified administrator of Henry Wesley.

The reply, in effect, is a general denial of the new matter set up in the answer.

On these issues, the case was tried to a jury, and resulted in a verdict for the plaintiff. Motion for new trial was overruled, and a bill of exceptions was taken, setting out all of the evidence and the charge of the court. There are numerous assignments of error for which the railway company asks that the judgment below be reversed.

The first question is as to the right of this administrator to prosecute this action. That is, whether or not he is, as a matter of law, the duly appointed and qualified administrator of Henry Wesley. That question was made in various ways. It was made in the request to charge, and in exceptions to the admission and exclusion of evidence; and what I will say upon that subject, in brief, will dispose of all the questions as to the administrator, in whatever shape they arise in the record.

In a case in 18 L. R. A., 242, a case decided by the New York court of appeals, it is said: " The decision that a testator was an inhabitant of the county, made by a surrogate to whom a will is presented for probate, is conclusive against collateral attack independent of any statutory provision, at least where the surrogate had jurisdiction of the subject matter by reason of the fact that testator was an inhabitant of the state at the time of his death." In the notes in this report there is quite a collection of authorities on that subject.

An examination of the letters of administration and the order of the probate court appointing this administrator, we think, shows that the question of his residence was necessarily determined by the probate court in making this appointment. In Shroyer v. Richmond, 16 Ohio St., 455, the court say, at page 465: " Proceedings for the appointment of guardians are not *inter partes*, or adversary in their character. They are properly proceedings *in rem*; they are instituted, ordinarily, by application made on behalf of the ward, and for his benefit; and the order of appointment binds all the world. In such a proceeding, plenary and exclusive jurisdiction of the subject matter, has been conferred by statute on the probate court, and that jurisdiction attaches whenever application is duly made to the court for its exercise in a given case. It is not essential to the jurisdiction, that the ward be actually before the court unless, by reason of his right to choose a guardian, or for other cause, the statute so require. And when jurisdiction has attached, the court has full power to hear and determine all questions which arise in the case, whether in regard to the status of the ward or otherwise; and no irregularity in the proceedings, or mistake of law in the decision of the questions arising in the case, will render the order of appointment void, or subject it to impeachment collaterally. All questions neces-

sarily arising in the case, become *res adjudicata* by the final order of appointment, which binds all the world, until set aside or reversed by a direct proceeding for that purpose."

On that authority, and the authority in the 18 L. R. A., we think that the question as to the qualification and appointment of this administrator was determined by the probate court, and cannot be collaterally questioned in this case; and that was the holding that was finally made by the common pleas judge in this case, although he at first admitted evidence on both sides as to this question.

During the progress of the trial a postal card and two letters were admitted in evidence, over the objection and exception of the defendant railway company. This postal card and the letters were written by Henry Wesley to his sister. I will not take the time to read the postal card or these letters, because their contents are familiar to counsel. It is said that these communications were admitted in evidence because they might tend to show the state of affection between Wesley and his sister. It seems to us that, on the issue made here, that was not competent. That neither this postal card nor these letters were competent for that purpose, nor for any other. In fact, these writings did not tend, as we think, to show an affection between these parties. We think they were not competent for another reason : They were simply declarations made by this man Wesley in these writings. But, in any event, we think that while these letters and postal were incompetent, the weight of the evidence was slight, and they would not be very material except for the statement that they were admitted for the purpose of showing the state of affection between these parties.

On page 150 of the record, over the objection and exception of defendant, the plaintiff was allowed to prove certain changes that were made in similar cars by this railway company after this accident occurred.

It has been decided in Cleveland Provision Co. v. Limmermaier, 4 Circ. Dec., 240, a case decided in Cuyahoga county, opinion announced by Judge Hale : "In the trial of an action for damages for personal injuries through the negligence of defendant, repairs or changes made after the accident by the defendant are not to be construed as an admission by the defendant of prior negligence, and testimony as to such repairs or changes is incompetent to prove prior negligence." In the opinion, on page 241, he quotes from Railroad Co. v. Hawthorne, 144 U. S., 207, Justice Gray announcing the opinion, where it is said : "Upon this question there has been some difference of opinion in the courts of the several states ; but it is now settled, upon much consideration, by the decisions of the highest courts of most of the states in which the question has arisen, that the evidence is incompetent, because the taking of such precautions against the future is not to be construed as an admission of responsibility for the past, has no legitimate tendency to prove that the defendant had been negligent before the accident happened, and is calculated to distract the minds of the jury from the real issue, and to create a prejudice against the defendant."

In Bailey's Master's Liability for Injuries to Servant, on page 525, there is a collection of the authorities in a note to the same effect; also in Elliott's work on Roads and Streets, page 647.

On these authorities we hold that there was error prejudicial to the rights of the defendant as to the admission of this evidence.

There were numerous exceptions taken to the refusals to charge; errors assigned in the charge, and exceptions taken to the charge as given; and the claim is made that the court below should have sustained a motion to direct a verdict at the close of the plaintiff's testimony; and that the verdict is not sustained by sufficient evidence.

I will take up the requests to charge, the exceptions to the charge, and these questions somewhat together, because, in the view we take of this case, many of them can be grouped together and disposed of in that way.

On page 255 of the record, the court was asked to charge the jury: "That the mere fact that it is stated in the petition that the locomotive engineer and conductor were the superior officers of decedent (which statement is denied by the defendant) is not sufficient to make out such superiority, but the plaintiff must satisfy you by a preponderance of the evidence that such engineer or conductor actually had and used their power and authority over decedent in the matter in question, and that they had knowledge (which decedent did not have) that the flat car was improperly loaded or that the falling of a stone therefrom might reasonably have been prevented, and if plaintiff has failed so to satisfy you, your verdict must be for defendant." This request was refused.

The ninth request was refused: "A person accepting employment as freight brakeman upon a railroad, assumes the ordinary risk of danger and accident incident to the service, including the consequence of the negligence and carelessness of his fellow workmen in the service, not caused by the acts of those exercising authority over him, and for these the defendant is not liable; and unless you find from the evidence that the proximate cause of the accident was the careless or negligent act or acts of a superior while exercising his authority over him, and was not contributed to by any want of ordinary care on the part of Wesley, your verdict must be for defendant."

This case was tried in the court of common pleas on behalf of the plaintiff with this view of the case: That it was an action that was covered by sec. 2 of the act of April 2, 1890, 87 O. L., 149 and 150. That section is: "It shall be unlawful for any such corporation to knowingly or negligently use or operate any car or locomotive that is defective, or any car or locomotive upon which the machinery or attachments thereto belonging are in any manner defective. If the employe of any such corporation shall receive any injury by reason of any defect in any car or locomotive, or the machinery or attachments thereto belonging, owned and operated, or being run and operated by such corporation, such corporation shall be deemed to have had knowledge of such defect before and at the time such injury is so sustained, and when the fact of such defect shall be made to appear in the trial of any action in the courts of this state, brought by such employee, or his legal representatives, against any railroad corporation for damages, on account of such injuries so received, the same shall be *prima facie* evidence of negligence on the part of such corporation."

The trial court coincided with counsel for the plaintiff below in holding that this was an action brought under that section of the statute. With that view of the case, this court cannot agree. The facts in this case, as shown by the plaintiff's testimony, are simply these: While this man was employed on this local freight train as a brakeman, the train came near the station called Fulton, took into the train a car or

cars, loaded with stone; that these were the ordinary flat cars; that they had no side boards, end boards, or standards; that these were heavy stone, stone of considerable size, spoken of in the argument here, if not in the record, as "dimension stone;" that they were loaded on this car. There is nothing in the plaintiff's testimony to show how those carloads of stone got into that train. It shows the fact that they were in the train; that one of these stones fell off the train and caused this wreck,' but there is nothing in the plaintiff's testimony to show knowledge on the part of any of the employes of the railway company, either Wesley, or the conductor, or the engineer, as to how the cars were loaded, how they were put into the train, or that any of these men had any reason to anticipate any injury from the manner in which this car was loaded Then it resolves itself into this (wsthout any further showing as to what is the customary way of loading stone of that kind): It is negligence on the part of a railway company to take into its train, a flat car loaded with heavy stone; and is the fact that such flat-cars are used by a railroad company, without side boards or end boards, negligence? In other words, is the use of a flat-car, the use of a defective car, or a car with defective appliances, within the meaning of the statute? We do not think that it can be so held, either as a matter of fact or as a matter of law. It is said in Mad River and Lake Erie Railroad Co. v. Barber, 5 Ohio St., 541, in the second paragraph of the syllabus: "The conductor of a train of railway cars, although he undertakes his engagement in view of the nature, hazards and responsibilities of his employment, has reason to expect, and a right to exact, that reasonable care and diligence on the part of his employer, in furnishing him with safe and sufficient cars and machinery for the train, which is most common and usual in the business of railroad companies; and being presumed to contract in contemplation of this, he can require no more." There is nothing in this record to show that it is not the common and usual way of hauling stone by railway companies to load the stone on the ordinary flat car, and as long as an individual or a railway company uses in its business the same appliances that are in use by people generally in that business, it cannot be said, either as a matter of fact, or as a matter of law, that that individual is guilty of negligence, because he is exercising the care that the ordinarily prudent man does exercise, because he is going according to the custom in his business.

What I have said as to that will indicate that this court is of the opinion that there was no evidence on the part of the plaintiff to show that there was negligence on the part of this railway company in putting those cars so loaded into the train. The evidence of the defendant showed that this brakeman had worked in and about these cars when they were put into the train; that is, he made the couplings at both ends of the cars when they were fastened to the other parts of the train. It is apparent from this record and the nature of things that Wesley had exactly the same opportunities for knowing the condition that those cars loaded with stone were in as any other employe of the company had; and if he knew that, then he assumed those risks. It was said in argument, in answer to the claim that he had been guilty of contributory negligence, that he could not have anticipated any danger from the condition that those cars were in and the way that they were loaded. That is true. But it is equally true, on the other hand, by exactly the same rule, that no other employees of the railway company, or the rail-

way company itself, could have anticipated an accident from the use of those cars, and the manner in which those stone were loaded.

In that view, we think there was no error in refusing to charge the requests that I have read; that there is error in the charge as given on page 266-7-8; and that these errors grow out of the view of the case taken by the trial judge and by counsel for defendant in error, that this was an action under the statute for damages for the use of a defective. appliance; and that the same idea accounts for the action of the trial judge when these requests to submit special interrogatories were finally brought to his attention.

It is said on page 269, where counsel called the trial judge's attention to these special interrogatories : "The court  *  *  *  refused to direct the special findings for the reason that they were not, nor either of them, pertinent, under the charge of the court." With the view that the trial judge took of the case, we think that is right; but with the view that we take of the case, if there was any ground for recovery here it would be on the ground that these cars were carelessly or negligently loaded, and that it was a matter of negligence and carelessness on the part of those servants who were superior to Wesley in the management of that train, and that their carelessness caused the injury. In that view of the case, we think that questions seven, eight, nine, ten, eleven, twelve and fourteen were proper questions to be submitted to the jury.

Counsel very earnestly argues that this court has misconstrued the section of the statute as to these special findings, and we are urged to reverse the holding that was made a year or so ago in this county in Baltimore & Ohio Railway Co. v. McCamey, 5 Circ. Dec., 631, where the court held that the questions in that case were proper questions to be submitted to the jury; that they were pertinent to the issues made by the pleadings and by the evidence; and where we held that these special findings were in time if they were submitted to the court after the close of the charge to the jury. Counsel have cited a number of cases where the holding has been the other way; that is, cases in other states. We think, to require a holding different from that in the McCamey case would be judicial legislation. It would be for the courts to put into the statute something that the legislature has not seen fit to put there. It may be, that in some cases this asking the jury to find specially, or to answer certain questions, may be abused; but if the abuse grows up the fault is in the legislation, It is the duty of the court to say what the statute means as it is written, and not to revise or amend the legislation because of supposed or anticipated abuses. We think, if these requests for special findings of fact come to the trial judge before the jury has retired, he can take the time then to determine whether they are proper questions. It is true that I am the only present member of the court who participated in the decision of the McCamey case, but, upon a reconsideration of all these matters, and an examination of the authorities, the court is still content with the holding made in the McCamey case. That is, that we must take the statute as it stands.

From what I have said, it follows that this judgment must be reversed for error in the admission of evidence, the letters and the postal card; the evidence as to changes or repairs; in refusing to charge requests six and nine; the errors on page 266-7-8 of the charge as given;

because there was no evidence offered by the plaintiff that would have warranted a verdict in his favor ; because the judgment is not sustained by sufficient evidence; and because these special findings of fact or special interrogatories, were not submitted to the jury.

The cause is remanded for a new trial.