HASSAN, APPELLANT, *v.* NORTHERN PACIFIC RY. CO., RESPONDENT.

(No. 4,342.)

(Submitted April 14, 1921. Decided May 23, 1921.)

[198 Pac. 446.]

*Personal Injuries — Railroads — Master and Servant — Negligence—Burden of Proof—Evidence—Insufficiency—Nonsuit.*

Personal Injuries—Railroads—Master and Servant—Nonsuit—When Proper.
  1. In an action by a railroad section-hand to recover for injuries caused by a tie falling upon him from a car which he, with others, was unloading, a nonsuit was properly granted, his evidence not disclosing negligence on the part of anyone to which the fall of the tie and the consequent injuries could be said to have been attributable. (MR. JUSTICE COOPER dissenting.)

Same—Negligence—Burden of Proof.
  2. In a personal injury action by an employee against his employer, whether based upon the Employers' Liability Act (Chap. 29, Laws 1911) or not, plaintiff has the burden of proving negligence.

Appeals from District Court, Silver Bow County; Edwin M. Lamb, Judge.

ACTION by John Hassan against the Northern Pacific Railway Company. Nonsuit entered, and from the judgment and a denial of a new trial, plaintiff appeals. Affirmed.

*Mr. J. O. Davies,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Walker & Walker* and *Messrs. Gunn, Rasch & Hall,* for Respondent, submitted a brief; *Mr. E. M. Hall* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Plaintiff instituted this action to recover damages for personal injuries. The trial court granted a motion for nonsuit, and a judgment was entered dismissing the complaint. From that judgment and from an order denying a new trial, plaintiff appealed.

The complaint alleges that on November 9, 1915, plaintiff was employed by the defendant in its yards at Butte, loading and unloading material from cars; that defendant, through its foreman, John J. Kelly, had negligently permitted a car of railroad ties to be loosely and negligently loaded; that the foreman negligently ordered plaintiff to work close to the car, and while he was engaged in the work in obedience to the order, one of the ties, so loosely loaded through the negligence of defendant, fell from the car, striking plaintiff, and causing the injuries of which he complains.

The answer admits defendant's corporate existence, and that plaintiff was employed by it on November 9, 1915, and denies every other allegation of the complaint.

Upon the trial plaintiff testified in his own behalf that on [1] November 9, 1915, he was employed by the defendant as a section-man, and engaged in unloading coal at the depot; that the foreman, Kelly, ordered him to go about a block and

a half and assist in unloading a car of ties that had come in; that when he reached the car of ties the foreman ordered him to remove a tie from under the car, and while he was engaged in that work a tie from the top of the car fell upon him, causing injuries which are described somewhat at length. He testified further that the ties were on a flat car which "did not have any sides permanently built up on the car above the bottom"; that the posts on the sides of the car had been removed and the wires cut; that the purpose of the posts "was to keep the ties together from falling down"; that at the time he was injured some men were "getting up on the car, and some had gone up, and they were waiting for me to pull this tie from under, and then begin unloading"; that Kelly told him to hurry, and then walked away, and was six or seven feet away from the car when he gave the order.

On cross-examination plaintiff testified: "Before we went up there they had some men to cut off the wires and cut the posts, and then we went over to unload the ties. The posts were cut and the wires cut when I first came up there. At that time there were a couple of men on the other corner of the car of ties, on top. There was just that one tie on the ground when I first got up there. It was on the ground; one end of it was under the car, in front of a wheel. * * * It was just about when I had lifted, partly the tie from the ground, when I was in a position of pulling the tie away that the other tie struck me. The tie slipped from the car and struck me with one end. * * * The car was standing still all the time from the time I first went up there until this tie fell off. The men on the car were on the other corner of the car. They were on the same side where I was, on the other corner, the other end of the car. * * * When Mr. Kelly brought me up there from the coal-cars he simply told me to pick that tie up, and he then walked right on. * * * I don't know how far he had gotten away when I started to pull the tie."

George Raisis, a witness on behalf of plaintiff, testified that he was working with plaintiff at the time of the accident; that the foreman told plaintiff "to pull the ties off the car. When he pulled tie off car another tie came off from the top and hit John Hassan on the side. The tie which John Hassan was pulling was under the car; it was near the car; it was right by the rail. * * * The ties were piled about twelve or thirteen feet on the car. The car had stakes out. We had about 100 ties out of car when we took the stakes out. The assistant foreman took the stakes out. * * * At the time the tie fell on the plaintiff John Hassan, I was working in the end of the car about fifteen feet from the place where the tie fell." On cross-examination he testified: "I was standing on the ground at the time the tie fell. There were two or three men on top of the car at the time the tie fell off. They were unloading ties. * * * These were square ties, railroad ties; they were about seven or eight feet long. * * * I heard only the assistant foreman tell John Hassan to pull the tie off the car. * * * It was two or three minutes before John Hassan started to pull the tie out from under the car that Kelly had gone away. There were two or three men on the car unloading ties right along."

The foregoing fairly summarizes the evidence introduced by plaintiff, and upon which the motion for nonsuit was based.

The burden was imposed upon the plaintiff to prove [2] negligence, and in this he failed. It is therefore immaterial whether Chapter 29, Laws of 1911, applies to one in the capacity in which plaintiff was engaged at the time he was injured. That the evidence is insufficient to make a case for the jury is so obvious that a discussion of it or of the rules of law applicable would be a work of supererogation. With this in mind, the case cannot be distinguished from *McGowan* v. *Nelson,* 36 Mont. 67, 92 Pac. 40, and upon the authority of that case the judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES REY-
NOLDS and GALEN concur.

MR. JUSTICE COOPER: I dissent.  Appellant relies upon the
negligent order given by the foreman.  The complaint charges
the defendant with the negligent loading of ties upon a car,
and negligently directing the plaintiff to remove another tie
from beneath it.  The evidence shows that the plaintiff and
other men were brought from another part of the yard to
unload the ties from this car, a flat car.  The posts and wires
designed to hold them in place had already been removed by
someone else.  The plaintiff testified that ''There were some
men getting upon the car, and some had gone up, and they
were waiting for me to pull the tie.  Kelly came along with
us; he gave me the order to pull the tie; told me to hurry
along; that they had to unload the car; and he walked away
from me.  Kelly was about six or seven feet away when he
gave the order to pull this tie out.''  About 100 ties had
been thrown off at the time the order was given to plaintiff.
Kelly was the foreman, directing the movements of the crew.
The record does not show that any of the men were im-
mediately above the plaintiff when the tie started to fall.
Under these circumstances, it is proper to infer that the car
was negligently loaded.  In any event, it was the foreman's
duty to observe immediate conditions, and not to negligently
send plaintiff into a place of danger.  If he had exercised due
care, he might have noticed the precarious position of the tie
before delivering the order.  With plaintiff's eyes fixed upon
the tie under the car, he could not be expected to apprehend
conditions above him.  He had a right to assume that Kelly
would not expose him to danger from another agency out of
his vision.

If we substitute the name of Kelly for that of Price, and ties
for the lumber, the circumstances shown in *Hardesty* v. *Largey
Lumber Co.,* 34 Mont. 151, 86 Pac. 29, furnish a complete

analogy to those presented here. This court, reviewing a ruling of the trial court in denying a nonsuit, used these words: "The evidence further shows that the plaintiff was directed by Price to go to the very place where he was injured, and it is self-evident that, if properly piled, the lumber would not have fallen of its own account." This is just as true of the tie in question. In my view, that case is favorable to plaintiff's contention.

The law, it seems to me, applicable to this case is exemplified by Mr. Labatt, in volume 4, section 1470, page 4304, of his latest edition on Master and Servant, where is is said: "According to the great majority of the cases, therefore, all that is necessary to fix liability upon the master is that the negligent order which caused the injury should be proved to be incident to the performance of the duties of his position." In section 1364, page 3939, the same author further explains the rule announced, thus: "The judicial theory is that the order, having a natural tendency to throw the servant off his guard, may properly be considered to excuse him from the exercise of the same degree of care as would have been incumbent on him if this case had not involved this factor." (See, also, 2 Bailey's Personal Injuries, sec. 414, pp. 1256, 1261; 8 Thompson on Negligence, sec. 3814.)

*McGowan* v. *Nelson*, 36 Mont. 67, 92 Pac. 40, did not involve the negligent order of a vice-principal. The following cases from other jurisdictions did: *Lee* v. *Woolsey*, 109 Pa. 124; *Johnson* v. *Minneapolis etc. Co.*, 67 Minn. 141, 69 N. W. 713; *Foster* v. *Railway Co.*, 115 Mo. 165, 21 S. W. 916; *Illinois Steel Co.* v. *Schymanowski*, 59 Ill. App. 32; *Haley* v. *Case*, 142 Mass. 323, 7 N. E. 877; *Sambos* v. *Cleveland etc. R. R.*, 134 Mo. App. 460, 114 S. W. 567; *Dooley* v. *Town of Sullivan*, 112 Ind. 451, 2 Am. St. Rep. 209, 14 N. E. 566; *Harrison* v. *Denver R. Co.*, 7 Utah, 523, 27 Pac. 728.

The foreman's duty brought him in full view of the entire operations, and, had he used **ordinary** care to observe the con-

ditions then presented, he might have delayed his order until the danger was past, or have given plaintiff timely warning of the falling tie.   Prompt obedience to the orders of a superior, without time, opportunity or mind to apprehend danger, not immediately and obviously threatening, should not defeat the action.

The foreman's demeanor at the time might have suggested to Hassan that more was to be feared from debate upon the propriety of his order than from contact with a falling tie, or any other danger then apparent to him.   The case is not entirely free from doubt, but, in my opinion, the evidence presents a case for the jury upon its weight, not one of legal sufficiency for the court.