[Civ. No. 10738. Second Appellate District, Division One.—August 14, 1936.]

EDWARD C. EASON, Appellant, v. KELLY PIPE COMPANY (a Corporation), Respondent.

J. M. Clements and James V. Brewer for Appellant.

Raphael Dechter and B. L. Hoyt for Respondent.

HOUSER, P. J.—From the record herein it appears that, as a part of certain work which it had engaged to perform, Hill Electric Company desired to erect four steel light poles, four inches in diameter, and to a height of twenty-five feet above the surface of the ground; that theretofore it had pur-

chased eleven pieces of second-hand four-inch pipe, of a length of fifteen feet each, which it had stored with defendant, Kelly Pipe Company, which latter company was a dealer in new and second-hand pipe; that in compliance with the requirements of the job that Hill Electric Company had undertaken to perform, had its stored pipe been used therein it would have been necessary, not only to have welded together four sets of two lengths each of such pipe, but also that a cross-arm, of a weight of about sixty pounds, to be furnished by Hill Electric Company, be welded at one end of each of such sets, and a hole one inch in diameter be cut or drilled in the pipe about twelve feet from the cross-arm. For performing that particular work, Hill Electric Company agreed to pay Kelly Pipe Company the sum of $4. However, it having been ascertained that the pipe which theretofore had been stored by Hill Electric Company with Kelly Pipe Company could not be found, it was agreed between those parties that Kelly Pipe Company would substitute other pipe "just as good". The work by Kelly Pipe Company having been completed, Hill Electric Company proceeded to the work of erection and the installation of said light poles. In that connection, the bottom end of one of the poles was placed in a hole five feet deep, the pole erected, and earth was then tamped about the pole; a forty-foot extension ladder was placed on the surface of the surrounding ground, the bottom end of which ladder was about five feet from the erected pole, and the top end thereof was at or near the top of such pole. Thereunder two men proceeded with the work of placing the necessary electric fixtures on the top of the pole. No ladder or other brace was placed against the pole on the side opposite that on which the two men were working, although an additional extension ladder was then and there available for their use. The aggregate weight of the fixtures and the cross-arm was about 120 pounds. Plaintiff, who was one of the workmen, and who weighed about 195 pounds, was at work at the extreme top of the pole; the other workman, who weighed about 135 pounds, was in a position on the ladder immediately below his fellow workman. While thus occupied, the pole bent in such a way that "a slight fracture of the metal itself on the inside of the bend" was produced at a point about two feet from the surface of the ground, with the result that plaintiff, "riding" the pole, was precipitated to the roof of

an adjoining shed. Because of injuries then and there sustained by plaintiff, he brought the instant action for the purpose of recovering a judgment against Kelly Pipe Company.

It also appears that in the course of the conduct of its business, Kelly Pipe Company advertised to the effect that it dealt in "new and reconditioned pipe and casing, . . . tested and guaranteed"; that in fact, prior to the date of the accident in question, Kelly Pipe Company had made a usual water test of "200 pounds" on the pipe; that there are many different kinds of light poles, which are of varying heights; that although some light poles are without support of any kind, some are "lashed to a building"; and others are "supported by guy lines"; that Kelly Pipe Company had no knowledge or information regarding the manner in which the light poles were to be installed; that sometimes men "work on them and sometimes they get up on the truck. Sometimes they work on them and sometimes not"; that the light pole in question was capable of sustaining "several hundred pounds vertical weight"; but that "if lateral stress were placed against the top of the pipe, it would have a tendency to bend over"; however, "if two ladders of equal weight were applied against the pole", or if "a man working on a pole in that position, with the ladders braced against the pole", there would be "a tendency to avoid the inclination to bend" the pole; that the defect in the pipe that bent was one that was not apparent to even a skilled workman; that to all appearances, the pipe "looked like any other ordinary piece of pipe"; that its defective condition became observable only when the pipe was "broken up" or cut into several different pieces, and then only by the aid of a microscope in the hands and under the direction of an expert in metallurgy or an engineer. What was the type or the brand of the second-hand pipe that had belonged to Hill Electric Company and which it had stored with Kelly Pipe Company and for which the latter had substituted the pipe in question, was not disclosed by the evidence; nor was it shown what was either the apparent or the real (expert) condition of the Hill Electric Company used pipe. For aught that appears in the evidence, the agreement made by the Kelly Pipe Company, that in place of the Hill Electric Company stored pipe that could not be found, Kelly Pipe Company would

substitute other pipe "just as good" was literally carried out. The substituted pipe may even have been better than the other.

No issue was presented by the pleadings regarding any concealment by Kelly Pipe Company of the condition of the pipe that was supplied by it; nor was there any evidence that the welding job that was done by it on the light pole was defective in any particular.

From a judgment that ensued in the action as a result of an order of "nonsuit" that was made by the trial court on motion of defendant at the close of the introduction of evidence by plaintiff, the instant appeal is presented to this court.

 The principal point to which the attention of this court is directed relates to the question of whether, in the circumstances hereinbefore set forth, Kelly Pipe Company incurred any liability.

At the outset, it may be assumed that, in appropriate circumstances, a dealer in new pipe, who, with full knowledge of the purpose to which a quantity of it is to be put by a purchaser thereof, for example, as light poles, together with full knowledge of all pertinent facts connected with the method, the means and the manner proposed to be adopted and pursued by such purchaser in the erection and the installation of such pipe as light poles, may become liable in damages to a workman who, in the absence of contributory negligence on his part, may be injured in the course of such erection or installation, provided that the course proposed in such erection and installation of such light poles be substantially pursued and carried out, and that the accident through which the workman may be injured be proximately caused by an act of negligence on the part of the seller of the pipe, arising either from such patent defect therein, actually known or which should have been known to the seller of the pipe, but not known or readily discernible to the workman; or, some latent defect, either discovered, or, discoverable by the seller of the pipe through the exercise by him of ordinary care in the premises. (*Kalash* v. *Los Angeles Ladder Co.*, 1 Cal. (2d) 229 [34 Pac. (2d) 481], and authorities there cited.) But whatever may be the correct rule where a dealer sells new pipe and a subsequent accident occurs from its use, it should be apparent that when old or second-hand pipe is the subject of the sale, at least in the

absence of full and explicit information as to all pertinent details being given to the seller regarding the means and the method proposed to be employed in the erection and the installation of the pipe as a light pole, he should incur no liability in damages for an injury that may be sustained by a workman while engaged upon the job. Even where new pipe has been used, and prior to the sale thereof the seller has been fully informed not only as to the use to which such pipe was to be put, but as well as to the means, the method and the manner to be employed in the installation and the future use thereof, it is a harsh rule that will admit of a liability being incurred by the seller for the reason that the pipe did not stand the strain to which it was subjected. Ordinarily it would seem fair that a buyer should be accorded the right and the privilege of purchasing any size of pipe that he may desire, and thereafter put it to any use that may seem fit and proper to him; and that irrespective of any use of the pipe intended by the buyer, even though communicated to the seller, that the latter should not be denied the right (without incurring liability as might relate to a subsequent accident), of selling his property. In other words, if an intending purchaser should wish to buy two-inch pipe that he might intend to use as light poles, when in accordance with scientific deduction four-inch pipe would be advisable, no just reason is discernible why a dealer in pipe should assume to dictate to the intending purchaser and require that he either purchase four-inch pipe or none at all. If, in such circumstances, the principle of liability in the seller for selling the wrong size pipe be sustainable, in order to protect himself from liability in making sales the seller must not use slight, or merely ordinary care, but very great care, which would involve or require, not common or ordinary knowledge of the strength of pipe in each and every architectural or other situation in which pipe may be used, but extraordinary knowledge thereof, or that possessed by experts in metallurgy, engineering, architecture, or some kindred science.

In the instant case, it is clear that the facts are not such that any principle of law that in some circumstances might be held to impose liability on Kelly Pipe Company may properly be here applied, because it conclusively appears that, as related either to the pipe in question, or to the light pole in

its completed condition, Kelly Pipe Company was not a dealer; at most, in performing the work it was engaged to perform, it was acting as an employee in performing labor on pipe which, although at one time had been the property of Kelly Pipe Company, had been substituted for other pipe that theretofore had belonged to Hill Electric Company. With reference to the substituted pipe, all that Kelly Pipe Company agreed to do, and all that it purported to do, was to supply pipe "just as good" as that which had been stored with it by Hill Electric Company; and the evidence fails to show that that condition in the agreement was not carried out. Nor, even assuming that Kelly Pipe Company might have been required to use some degree of care in the premises for the protection of workmen who might be employed to perform labor on the completed light pole, the evidence was silent regarding what would constitute the care that lawfully might be required. In other words, there was nothing that disclosed or that tended to show that Kelly Pipe Company had not exercised slight, or even ordinary care in the premises; and it should be clear that in the absence of evidence regarding the point a jury should not be permitted to set up its own standard in that regard. All the authorities which directly hold to the principle of liability of a dealer in cases of the general character here presented predicate such ruling upon a complete knowledge on the part of the dealer, not only of the use to which the sold article is proposed to be put, but equally as well, and in addition thereto, upon the method, the means and the manner adopted or proposed to be adopted by the purchaser of the article in putting it in use. Herein no evidence of knowledge of the assumed dealer, especially as to the latter requirement, appears in the record. It is shown affirmatively that although the dealer knew that the light pole would carry a cross-arm and lighting fixtures, it had no knowledge regarding the method that would be employed in attaching the latter to the pole; particularly did Kelly Pipe Company not know that two men, weighing in the aggregate 330 pounds, would do the necessary work on a forty-foot extension ladder braced against the pole, without any compensating brace, by means of a ladder or otherwise, being placed on the side of the pole opposite to that on which the men were to perform their work. It knew nothing regarding the number of men that would be

employed in that particular, whether one, or two, or more; nor did Kelly Pipe Company have any knowledge that the pole was not to be properly and safely secured by guy lines or wires; or whether it was to be "lashed to a building". In fact, Kelly Pipe Company was not informed that either in the erection or in the installation of the light pole, or at any time thereafter, it was to be subjected to any lateral stress whatever. How deep the pole was to be set in the ground, whether two feet or ten feet, or whether it was to be set in loose sand, firm earth, or solid concrete, was another item of construction of which Kelly Pipe Company was wholly uninformed.

The case of *Kramer* v. *Mills Lumber Co.*, 24 Fed. (2d) 313 [60 A. L. R. 366], in which a nonsuit had been granted, is in point. In part, it was there held (syllabus):

"Where steel company purchased timber for support of scaffold, specifying dimensions and grade of lumber desired, and had determined position in which it was to be placed and burden it was to bear, lumber company, furnishing timber of dimensions requested, was not responsible to purchaser's employees using scaffolding for sufficiency of timber in place where it was to be used.

"Occurrence of accident causing death by breaking of a timber, which supported a high scaffold on which deceased was working, held not of itself to prove negligence of lumber company furnishing timber to deceased's employer.

"Strength needed in girders to carry known weights in case of bridge, or joists, or rafters upholding floor, where span is long and unsupported, is not a matter of common knowledge, but belongs to the field of experts.

"Court will not assume that lumber dealers, from the nature of their business, know breaking or crushing limit of all sizes and kinds of lumber in which they deal, as against thrusts of known forces in whatever position timbers may be placed."

In the body of the opinion, in part it was said:

"There is no evidence that the breaking strength of such timbers is generally known among dealers in lumber. It would be an unwarranted and an unreasonable assumption that such dealers from the nature of their business are presumed to know the breaking or crushing limit of all the sizes and kinds of lumber in which they deal, however the

timbers may be placed, and as against thrusts of any known force or direction."

Appellant also urges the point that the motion for a nonsuit was insufficient because no grounds therefor were stated. However, in that regard the record shows that in making the motion "for a nonsuit", the defendant made the following statement:

"Mr. Dechter: At this time, your Honor, on behalf of the defendant we move the court for a nonsuit upon the ground that the evidence introduced by the plaintiff does not constitute nor show a cause of action in favor of the plaintiff and against the defendant Kelly Pipe Company, *as will appear more specifically from my further argument to the court. . . .* "

And since thereafter, in presenting the argument in favor of its motion, the defendant fully specified the various grounds upon which it relied, it becomes apparent that the point suggested by appellant is untenable.

Although other points are presented by the respective parties herein, it is deemed unnecessary to devote consideration to them.

The judgment is affirmed.

York, J., and Doran, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 8, 1936.