[Civ. No. 3443.   Fourth Dist.   Dec. 22, 1947.]

CHARLES L. OWEN, Respondent, v. RHEEM MANUFAC-
TURING COMPANY (a Corporation), Appellant.

Forrest A. Betts, Currer & Steck and William J. Currer, Jr., for Appellant.

Davidson & Bartlett and Fred A. Wilson for Respondent.

GRIFFIN, J.—Action for damages. Plaintiff was employed by the United States government as a laborer in Ontario, at a branch warehouse of the San Bernardino Air Depot. On May 10, 1943, he was engaged, with others, in stacking steel drums in the warehouse yard. They were being removed from railroad boxcars. After unloading three carloads, plaintiff's foreman directed plaintiff and a fellow workman to open the door of a fourth boxcar which was loaded with drums. These steel drums were manufactured by defendant company under a government contract and were loaded by the company's agents, at its plant at South Gate, California. These steel drums were cylindrical in form, 22½ inches in diameter and 35 inches in length. Each drum was protected by a rim or chime extending one inch beyond each end of the drum. Each drum weighed about 73 pounds.

The evidence shows that defendant endeavored to "get every drum in we can" and to accomplish this, it stacked them "right up to the edge of the door," and "as close to the door as is permissible to get the door open and closed." These cars vary in size. The standard size is 50 feet long by 10 feet wide. The one that was opened by plaintiff was one of the smaller sizes, 40½ feet in length and about 9½ feet in width. Witnesses testified that sometimes defendant company loaded boxcars with the drums lying on their sides and with the ends pointed toward the door. At other times, and in smaller cars, it loaded them with the drums standing end on end at the entrance to the door. A defense witness testified that when the defendant company loaded boxcars, it loaded the drums "either all on the side or all on end" and never at any time used both methods in any one car.

Plaintiff testified that the car being opened by him and his fellow worker was so loaded that all the drums were lying on their sides except three or four tiers immediately in front of the door which was being opened, and at that door they were standing end on end, three drums high. Plaintiff's foreman testified that they could not open the opposite door "because it was latched from inside." It is undisputed that the drums were stacked without any braces, shoring or other device to prevent them from falling out when the door was opened. On the day in question, as the plaintiff endeavored to open the door, he found that it was stuck and as a result, plaintiff endeavored to push it open while his fellow workman used a pinch bar with which to pry it. Under the combined pressure, the door partially opened and a steel drum fell out from the top tier, struck plaintiff, and injured him quite seriously. Immediately after the accident, the remaining drums on the upright top tiers were leaning against the door. They were subsequently pushed back and the car door was then fully opened.

Plaintiff instituted this action to recover damages against defendant company alleging that it had negligently loaded the drums in the car and failed to place or maintain any proper guards to prevent them from falling when the door was opened.

Defendant denied negligence and affirmatively pleaded that plaintiff assumed the risk incident to his work and also charged him with contributory negligence. A verdict for $7,000 was rendered by the jury for the plaintiff and this appeal followed.

Defendant argues first that the evidence shows that it fol-

lowed the custom and usage of the industry in loading the barrels into the railroad car and since plaintiff made no attempt to prove that such custom was not followed, it was not guilty of negligence; that there was no evidence that defendant should have anticipated that the method of loading the steel barrels into the car here involved might cause bodily harm to anyone, and particularly to those to whom it was supplying the car; that they were presumed to know the custom and usage of the industry in unloading them, citing such cases as *Eason* v. *Kelly Pipe Co.*, 16 Cal.App.2d 88 [60 P.2d 488]; *Dahms* v. *General Elevator Co.*, 214 Cal. 733 [7 P.2d 1013]; *Jackson* v. *Missouri Pac. Ry. Co.*, 104 Mo. 448 [16 S.W. 413]; *Hassan* v. *Northern Pacific R.R. Co.*, 60 Mont. 105 [198 P. 446]; *Toledo & Ohio C. R. Co.* v. *Beard* (1898), 20 Ohio C.C. 681, 11 Ohio C.D. 406; *Highland* v. *Seaver* (1942), (Miss. Supreme Judicial Court), 8 C.C.H. Negligent Cases, 685; Restatement of the Law of Torts, §§ 395, 396.

In reference to the custom and practice of loading and shipping drums, one of defendant's witnesses testified, over objection, that in loading and shipping drums for defendant company, for over two years, it was the custom that "the loading of drums, to my knowledge are either by laying down or standing up on end" and that "we do not bulkhead our cars" and to the best of his knowledge, "generally, in the industry, they were not bulkheaded."

Failure to observe custom may be evidence of negligence, but the standard is not fixed by custom. The standard is always due care. The presence or absence of custom does not alter that standard. Custom may assist in the determination of what constitutes due care. What others do is some evidence of what should be done, but custom is never a substitute for due care. These principles were applied in *Polk* v. *City of Los Angeles*, 26 Cal.2d 519 [159 P.2d 931], where it was said:

"Conformity by defendant to general custom of power companies with relation to the manner of maintaining power lines and rights of way does not excuse defendant unless the practice is consistent with due care." (Citing cases.) See, also, *Sheward* v. *Virtue*, 20 Cal.2d 410 [126 P.2d 345]; *Neel* v. *Mannings, Inc.*, 19 Cal.2d 647 [122 P.2d 576]; *Robinet* v. *Hawks*, 200 Cal. 265 [252 P. 1045].

If it may be considered that the evidence produced did in fact establish the custom of the industry in loading these

particular kind of barrels in boxcars, the cases firmly establish the rule that mere custom or usage cannot make due care out of conduct that is in fact negligent. As said in *Perry* v. *Angelus Hospital Assn.*, 172 Cal. 311, 315 [156 P. 449], it is said:

"We know of no authority for the proposition that by continuing in a careless performance of duty a party transforms its negligence into due care."

Under defendant's theory of the case, it argues that it followed the custom of the industry in loading the barrels; that there were safety devices on the car doors, as illustrated in photographs in evidence; that the doors could have been opened by means of these devices, if properly handled by persons having knowledge of the correct way of opening such cars and of unloading them, and that even if opened by a "pinch bar" it was the custom to open the door only far enough so that the workmen could see whether or not there was any danger of the contents falling from the car; and that under these circumstances, there was no necessity of *shoring* the barrels at the door entrance.

It is also argued that the defendant was not a true *supplier of chattels* under the rule set forth in sections 395 and 396 of the Restatement of the Law of Torts, etc.; that the United States government was in reality such supplier since it ordered the barrels, received, inspected and accepted them on the loading dock of defendant, and from that time forward had exclusive control of the loaded railroad car and its contents.

The evidence on this last point shows that the United States government contracted with defendant company to furnish 200,000 such barrels "to be shipped only as released . . . f.o.b. cars and/or freight station at site of contractor's plant." Under the bill of lading furnished by the government and made out by defendant, defendant was the consignor. It contained the phrase "f.o.b. consignor's plant." Freight was paid by the United States government. The consignee was the "Depot Supervising Officer" at the San Bernardino Airport. The car was finally routed to the branch warehouse at Ontario. After the cars were loaded by defendant, the government inspector, with defendant's foreman, would "check the cars and seal them with the government seal." When the car arrived at its destination, the seal was broken by an authorized officer at the depot.

In upholding a verdict for plaintiff, this principle was an-

nounced in *Wintersteen* v. *National Cooperage & Woodenware Co.*, 361 Ill. 95 [197 N.E. 578] : that "every person owes a duty to all persons to exercise ordinary care to guard against any injury which may naturally flow as a reasonably probable and foreseeable consequence of his act," for which wrong the law furnishes a redress; that this duty to exercise ordinary care to avoid injury to another does not depend upon contract, privity of interest, or the proximity of relationship between the parties. There, as here, an employee of the consignee brought suit against the shipper. As the employee was opening a boxcar door, one of the barrels fell out and injured him. The shipper had used defective lumber for *shoring* or "the dunnaging of the car." In respect to negligence, the court there said:

"If a reasonably prudent person might, and ordinarily would, foresee that the omission to do a certain act or the commission of an act in a certain way would likely result in injury to another, and injury to another does follow as a result thereof, such act of omission or commission is negligence, and the proximate cause of the injury. (1 Thompson on Negligence, sec. 50.) There was positive evidence of the defective condition of one of the strips used in the dunnaging of the car. . . . The facts and weight of the evidence were for the jury, and we would not be warranted in disturbing the verdict of the jury unless it be against the manifest weight of the evidence."

While our search has not disclosed a case where the courts of this state have applied the above-mentioned rule where, by the act of a shipper, injury resulted to a consignee or his employee, the *principle* has been employed in *Dahms* v. *General Elevator Co., supra,* where the elevator operator in a business building was injured by the negligence of the defendant which had entered into a contract with the owner of the building (plaintiff's employer) to inspect and repair the elevator. It was there said, at page 738:

"We are of the opinion that it falls properly within another well-settled exception. There are numerous cases from nearly every jurisdiction which hold that an action sounding in negligence may be maintained by a stranger to a contract for the execution of a specific piece of work or the sale of a manufactured article, if the product of the stipulated work or the article sold was abnormally dangerous or noxious."

See, also, *Kalash* v. *Los Angeles Ladder Co.,* 1 Cal.2d 229

[34 P.2d 481], in which case it is remarked that things classified as inherently dangerous have been steadily extended to include those articles which are reasonably certain to place life and limb in peril, when negligently made, prepared or constructed, as it then becomes a thing of danger, with a corresponding extension of the application of the remedy. It began with articles such as the sale of poison and such things now include a dangerous and defective scaffolding (*Devlin* v. *Smith,* 89 N.Y. 470 [42 Am.Rep. 311]); defective rungs in ladders, and defective spokes in automobiles (*MacPherson* v. *Buick Motor Co.,* 217 N.Y. 382 [111 N.E. 1050, Ann.Cas. 1916C 440, L.R.A. 1916F 696]); etc. See, also, *Hall* v. *Barber Door Co.,* 218 Cal. 412 [23 P.2d 279]; and *Johnston* v. *Long,* 56 Cal.App.2d 834 [133 P.2d 409].

In the Kalash case it was also stated that the common law rule threw a strong arm of protection around the manufacturer which was for the purpose of warding off claims of third persons who were not direct purchasers from the manufacturers. In the instant case, the direct purchaser was the United States government. Plaintiff was the agent of the government. He was injured in unloading the drums for the purchaser. The relationship of the parties, therefore, was similar to that set forth in the Kalash case.

■ There was evidence that the freight car here involved was at least 9 feet 6 inches in width; that in cars of such width the barrels could have been placed horizontally throughout the car and that it would not have been necessary to stack them in a perpendicular position at the door. It was argued to the jury that stacking them horizontally, and on end at the door was *imminently dangerous* to third persons called upon to open the door and that such loading, with the jolting to which it must be inevitably subjected in transit, rendered the unsecured position of the drums *highly dangerous* and that such stacking, under the circumstances, constituted and created a hidden danger; that since this dangerous method was employed by defendant, due care demanded something to overcome the hazard either by installing shoring or safeguards or stacking the drums perpendicularly in the center and horizontally on the outside tiers; that otherwise there was a duty imposed upon defendant to warn of such dangerous condition. The evidence was capable of such construction and interpretation. The facts and weight of evidence and inferences to be drawn therefrom were for the jury to determine. We do not feel warranted in disturbing its verdict in this respect.

The next argument involves a consideration of the evidence as to what knowledge plaintiff may have had of such condition or hidden danger, and of his freedom from negligence contributing proximately to his injury.

In this connection, defendant asserts that "the plaintiff knew the method by which the barrels were loaded" by defendant, and consequently, having knowledge of the danger or condition creating the hazard, if any, plaintiff was not permitted to expose himself to it without being charged with negligence on his part. On this point plaintiff, Owen, testified that on May 10, 1943, he, Owen, was engaged with seven others, in "unloading—stacking barrels"; that he, himself, had not previously been engaged in "opening any of the cars"; that he was told by the foreman to open this particular car and get it ready to be unloaded; that he had previously helped "unload cars" and had "worked around freight cars" and had opened car doors and unloaded smudge pots on previous occasions; that he didn't see how the barrels were loaded in the freight cars previously unloaded on that day; that he did not have anything to do with taking those barrels "out of the car"; that he had not been unlocking or opening any of the doors on the cars; that he did not pay any attention to the men who were doing it; that he rolled some of the barrels down the incline and stacked them in the field; that he was told there were barrels in the car here involved before he tried to open the door.

Plaintiff's foreman testified that Owen had worked under him for about six months but very seldom worked in boxcars. Defendant's witnesses pointed out what they called "safety devices" on the car door, and demonstrated how, by first taking hold of one handle and then by use of another handle on that particular car door, the body of the person opening it would not be exposed to danger from falling of the contents of the boxcar when opening the door. ▮ We do not believe the evidence produced on this question clearly shows, without contradiction, that plaintiff was so experienced in opening boxcars containing barrels or that he was or should have been aware of the danger or condition which caused the barrel to fall and injure him. ▮ One does not assume the risks of danger which he has no reason to anticipate. (*DeGraf* v. *Anglo California National Bank,* 14 Cal. 2d 87, 100 [92 P.2d 899].) ▮ From the evidence produced, as to the manner in which plaintiff conducted himself,

under the circumstances, it cannot be said, as a matter of law, that he was guilty of contributory negligence proximately contributing to his injury. ■ No hard and fast rule can be laid down as to what a person should do for his own safety in the great variety and diversity of situations of danger which now constantly arise, but ordinarily what is due care or what would be the conduct of the everyday reasonably prudent man for his own protection under a like situation is a question of fact which must be left to the determination of the jury. (*Williams* v. *Field Transportation Co.*, 28 Cal. 2d 696 [171 P.2d 722]; *Neel* v. *Mannings, Inc., supra*, p. 655; *Anthony* v. *Hobbie*, 25 Cal.2d 814, 818 [155 P.2d 826]; *Wintersteen* v. *National Cooperage & Woodenware Co., supra.*)

On examination of one of defendant's witnesses counsel for defendant asked the witness if he had ever heard of a similar accident. Objection to this question was sustained. Exception is now made to the ruling, arguing that by the admission of such evidence it would show that defendant had not expected any similar accident and would have no reason to believe that any harm would come from the loading of the barrels in the manner in which they were loaded, citing *Highland* v. *Seaver, supra*. The ruling was not error. ■ While a *plaintiff* may prove previous accidents, for certain limited purposes, a *defendant* may not, at least in the first instance, prove absence of previous accidents. (*Thompson* v. *B. F. Goodrich Co.*, 48 Cal.App.2d 723, 729 [120 P.2d 693].)

■ The last contention raised by demurrer to the complaint is that the United States Employees Compensation Act (5 U.S.C.A. §§ 759-776) is a bar to the maintenance of this action since the plaintiff was, at the time of the accident, subject to the act and entitled to recover thereunder; that he was required to elect which of two remedies he would pursue, i. e., either his remedy under the compensation act or at common law; that since the complaint alleges no such election, and the United States Employees Compensation Commission did not authorize him to bring the action in question he had no standing before this court, citing *Dahn* v. *Davis*, 258 U.S. 421 [42 S.Ct. 320, 66 L.Ed. 696]; *Hunt* v. *Bank Line, Ltd.*, 35 F.2d 136; and *La Vino Shipping Co.* v. *Speck (The Nako Maru)*, 101 F.2d 716.

Plaintiff claimed damages for loss of wages and cost of medical service. There was evidence that $477.50 medical expense and $550.86 employee's compensation had been paid by the commission and the jury was instructed that under

the federal statutes the plaintiff would be required to reimburse the commission to that extent out of any money recovered by him.

The decision in *Cary* v. *Burris,* 169 Ore. 24 [127 P.2d 126], and cases hereinafter cited, appear to answer this contention. In the Oregon case it was held that "The act, by providing that the injured employee, from the moneys recovered from a third party as a result of a suit brought by him, must reimburse the United States for compensation previously received, necessarily by implication, sanctions the bringing of such action by the injured employee, and a recovery by the employee bars an action by the United States." (Citing *Oklahoma City* v. *Caple,* 187 Okla. 600 [105 P.2d 209].) See, also, *United States* v. *Klein,* 153 F.2d 55; *Hines* v. *Dahn,* 267 F. 105; *Wagner* v. *City of Duluth,* 211 Minn. 252 [300 N.W. 820]; *Roeper* v. *Albany Port District,* 43 N.Y.S.2d 848; *Wood* v. *Ford Garage Co.,* 162 Misc. 87 [293 N.Y.S. 999], affirmed in 300 N.Y.S. 1358; and *United States* v. *Bettis,* 39 F.Supp. 160.

In *Dahn* v. *Davis, supra,* relied upon by defendant, the action was against the United States government, rather than a third party. The government had paid the compensation claim. It was held that the act did not contemplate or provide for suits against the government.

*Hunt* v. *Bank Line, Ltd., supra,* arose out of the Longshoremen's and Harbor Workers' Compensation Act. (33 U.S.C.A. § 933.) That act, as there construed, provides that if the employee elects to receive compensation, he is to have no further interest in or control over the suit. No such provision is contained in the act here under discussion. (*La Vino Shipping Co.* v. *Speck (The Nako Maru), supra,* also involved the Longshoremen's and Harbor Workers' Compensation Act. We see no merit to the point stressed by defendant in its demurrer.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing was denied January 20, 1948, and appellant's petition for a hearing by the Supreme Court was denied February 19, 1948. Schauer, J., voted for a hearing.